IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IAN SORRELL KURIGER                §
TDCJ No. 2182944,                  §
                                   §
          Petitioner,              §
                                   §
V.                                 §          No. 3:19-cv-1638-S-BN
                                   §
DIRECTOR, TDCJ-CID,                §
                                   §
          Respondent.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Ian Sorrell Kuriger ("Kuriger"), a Texas prisoner, has filed a

*pro se* application for writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt.

No. 2. His case has been referred to the undersigned United States magistrate

judge for pretrial management under 28 U.S.C. § 636(b) and a standing order

of reference from United States District Judge Karen Gren Scholer. After

examining the petition, pertinent portions of the state-court record, the State's

response to the petition, and Kuriger's reply to the State's response, the

undersigned enters these findings of fact, conclusions of law, and

recommendation that the Court should deny Kuriger's petition for habeas

relief.

### Applicable Background

Kuriger was charged by indictment with intoxication manslaughter and

entered a plea of guilty, pursuant to a plea agreement with the State. *See* Dkt.

No. 14-1 at 10. On July 30, 2009, the court deferred adjudicating Kuriger's guilt and sentenced him to ten years of community supervision. *See State v. Kuriger*, 33292CR (40th Jud. Dist. Ct., Ellis Cnty., Tex. July 30, 2009); *see also* Dkt. No. 14-1 at 9-11. But, on February 7, 2018, the court revoked Kuriger's release to community supervision, adjudicated his guilt, and sentenced him to a term of ten years' imprisonment. *See* Dkt. No. 14-1 at 13-14.

Kuriger did not directly appeal his conviction. But, on September 10, 2018, he filed a state habeas application, which was denied without written order on the findings of the trial court, without a hearing. *See Kuriger v. State*, WR-89,431-02 (Tex. Crim. App. Feb. 6, 2019); *see also* Dkt. No. 14-1 at 16-23, 30. Then, proceeding *pro se*, he filed an application with this Court for a writ of habeas corpus under 28 U.S.C. §2254. *See* Dkt. No. 2.

### Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if

3

"it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine

4

what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal

court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682

6

F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an

opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

AEDPA establishes a one-year statute of limitations for federal habeas proceedings brought under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of:

8

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The time during which a properly-filed application for state post-conviction or other collateral review is pending is excluded from the limitations period. *See id.* § 2244(d)(2).

The one-year limitations period is also subject to equitable tolling – "a discretionary doctrine that turns on the facts and circumstances of a particular case," *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), and only applies in "rare and exceptional circumstances," *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

Taking the second prong first, "[a] petitioner's failure to satisfy the

statue of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009) (per curiam) (citation omitted). This "prong of the equitable tolling test is met only where circumstances that caused a litigant's delay are both extraordinary *and* beyond [the litigant's] control." *Menominee Indian Tribe*, 577 U.S. at 257 (footnote omitted).

But "'[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.' What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019) (quoting *Holland*, 560 U.S. at 653; footnote omitted).

A showing of "actual innocence" can also overcome AEDPA's statue of limitations. *See McQuiggin v Perkins*, 569 U.S. 383, 386 (2013). But the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401. (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

That is, the petitioner's new, reliable evidence must be enough to persuade the Court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386 (quoting *Schlup*, 513 U.S. at

329).[1]

## Analysis

### A.    Actual Innocence

In Kuriger's first ground for relief, he maintains that he is actually innocent of intoxication manslaughter. *See* Dkt. No. 2 at 6. More specifically, he claims that Dash-Cam footage, which was previously unattainable, shows him passing a field sobriety test by blowing a 0.00 on a breath analysis

---

[1] *See also Johnson v. Hargett*, 978 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means factual as opposed to legal, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey* [*v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted));; *Acker v. Davis*, 693 F. App'x 384, 392-93 (5th Cir. 2017) (per curiam) ("Successful gateway claims of actual innocence are 'extremely rare,' and relief is available only in the 'extraordinary case' where there was 'manifest injustice.' *Schlup*, 513 U.S. at 324, 327. When considering a gateway claim of actual innocence, the district court must consider all of the evidence, 'old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.' *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citations omitted). 'Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do."' *Id.* (quoting *Schlup*, 513 U.S. at 329). 'The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.' *Id.* (citations modified)). As a result, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329). Further, "[e]vidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'" *Hancock*, 906 F.3d at 390 (citing *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008)).

machine. *See id.*

But, insofar as Kuriger brings a stand-alone, substantive claim of "actual innocence," such a claim is not recognized as an independent ground for federal habeas relief and should therefore be denied. *See Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993))); *see also, e.g., House v. Bell*, 547 U.S. 518, 554-55 (2006); *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014); *cf. Schlup*, 513 U.S. at 314 (distinguishing "procedural" claims of innocence, which are based on a separate, underlying claim that a defendant was denied "the panoply of protections afforded to criminal defendants by the Constitution").

### B.    Claims Related to Kuriger's Deferred Adjudication

#### (i)    *Ground Two -- Ineffective Assistance of Counsel ("IAC")*

Kuriger's two remaining grounds for relief relate to the propriety of his deferred adjudication judgment. In ground two, Kuriger claims that his counsel was ineffective for advising him to accept deferred adjudication for the intoxication manslaughter charge when Texas law does not allow deferred adjudication for such a charge. *See* TEX. CODE CRIM. PROC. ART. 42.12 § 5(d)(1)(A) (West 2008) (since recodified in chapter 42A). Had he known that Texas law prohibited deferred adjudication under such circumstances, Kuriger continues, he would not have pleaded guilty. Thus, his counsel's erroneous

advice renders his plea involuntary. The undersigned concludes that this ground for relief fails for multiple reasons.

First, the AEDPA's statute of limitations bars it. As noted, a state criminal judgment becomes final under AEDPA "when there is no more 'availability of direct appeal to the state courts.'" *Frosch v. Thaler*, No. 2:12-cv-231, 2013 WL 271423, at *1 (N.D. Tex. Jan. 3, 2013) (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009)), *rec. adopted*, 2013 WL 271446 (N.D. Tex. Jan. 24, 2013). Finality of Kuriger's judgment is complicated by the fact that a Texas judge initially deferred adjudicating Kuriger's guilt, instead placing him on community supervision in 2009, but then adjudicated his guilt nearly nine years later on February 7, 2018. *See* Dkt. No. 14-1 at 9-11, 13.

> Under Texas law, "a judge may defer the adjudication of guilt of particular defendants and place them on 'community supervision' if they plead guilty or nolo contendere." *Tharpe v. Thaler*, 628 F.3d 719, 722 (5th Cir. 2010) (citing TEX. CODE CRIM. P. art. 42.12, § 5(a)). If the defendant violates a condition of his community supervision, the court holds a hearing to determine whether it should impose a judgment of guilt. *Id.* If the court convicts the defendant, it also sentences him. *Id.* Two distinct limitations periods then apply for the filing of habeas petitions. One limitations period applies to claims relating to the deferred adjudication order, and another limitations period applies to claims relating to the adjudication of guilt. *Id.* at 724; *see also Caldwell v. Dretke*, 429 F.3d 521, 526-30 (5th Cir. 2005).

*Frey v. Stephens*, 616 F. App'x 704, 707 (5th Cir. 2015); *see also Caldwell*, 429 F.3d at 530 ("Because an order of deferred adjudication community supervision is a final judgment within the plain meaning of the AEDPA section 2244, the one-year statute of limitations, for challenging substantive issues of [an order]

13

of deferred adjudication, [begins] to run when the order deferring adjudication [becomes] final."); *Tharpe*, 628 F.3d at 724 (holding that "a habeas claim that challenges a *deferred-adjudication order* and another habeas claim that challenges a conviction and sentence involve two different 'judgments' for AEDPA purposes" and "in dealing with two entirely separate and distinct judgments – one a deferred-adjudication order and the other a judgment of conviction and sentence – [federal courts] are dealing with two separate and distinct limitations periods under the AEDPA" (distinguishing *Burton v. Stewart*, 549 U.S. 147 (2007))).

Here, Kuriger's ground two for relief is premised on the illegality of the judgment of deferred adjudication. Therefore, the statute of limitations for ground two began to run when the order of deferred adjudication became final on August 29, 2009 – the expiration of Kuriger's time to file a notice of appeal as to it. *See* 28 U.S.C. § 2244(d)(1)(A); *Caldwell*, 429 F.3d at 529 (concluding that an order of deferred adjudication is a final judgment for purposes of section 2244). From that date, Kuriger had one year, or until August 29, 2010, to file a timely federal habeas application, absent a properly properly-filed application for state post-conviction or other collateral review to toll the limitations period. *See* 28 U.S.C. § 2244(d)(2); TEX. R. APP. PROC. R. 26.2(a)(1); *Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998). But it is undisputed that Kuriger did not file his state habeas petition until September 10, 2018, which was well past the statute of limitations period. Thus, the state habeas petition

did not toll Kuriger's limitations period. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) ("Finally, Scott's habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until *after* the period of limitations had expired."). Accordingly, the AEDPA's statute of limitations bars Kuriger's second ground for relief absent statutory or equitable tolling or establishment of actual innocence.

Kuriger does not directly address the statute of limitations issue in his reply brief. *See generally* Dkt. No. 21. To the extent that Kuriger's protestations of actual innocence could be construed, liberally, as a gateway claim of actual innocence allowing him to shirk the statute of limitations (as opposed to stand-alone habeas claim), they are not persuasive. Kuriger's evidence is not newly discovered: the test results on which Kuriger relies are from the time of his arrest in 2008; the evidence was therefore "within the reach of [Kuriger's] personal knowledge or reasonable investigation." *Moore*, 534 F.3d at 465. Nor does this evidence demonstrate a probability that, considering this evidence, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. Instead, the documents attached to Kuriger's petition show the presence of both alprazolam and diazepam in his system at the time of the incident, which could be used to establish intoxication even in the absence of alcohol. *See* Dkt. No. 2 at 12. Thus, Kuriger cannot rely on his actual innocence to escape the application of the AEDPA's statute of limitations.

And, even putting aside the statute of limitations issue, ground two fails on the merits. Initially, the State argues that Kuriger's IAC claim is predicated on a state law violation – that is, an illegally-lenient deferred adjudication. The State notes, correctly, that it is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, continues the State, this ground for relief is not cognizable through a federal habeas petition.

The undersigned disagrees with the State's framing of the issue. Kuriger is not asking this Court to review or decide an issue of state law. Instead, Kuriger appears to argue that his counsel's failure to advise him on an issue of state law rendered his performance so defective as to be violative of the Constitution. This theory is not outside the purview of federal habeas review. *See Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013) ("It is well established that a defense attorney's failure to raise a state-law issue can constitute ineffectiveness [under *Strickland*].")

But, before delving into a *Strickland* analysis, two observations deserve comment. First, in rejecting Kuriger's IAC claim related to the too-lenient deferred adjudication judgment, the state habeas court did not conduct a *Strickland* analysis, instead relying on the Texas doctrine that a criminal defendant is estopped from contesting as overly-lenient a criminal judgment from which he has derived a benefit. The findings of the state habeas court – later adopted in full by the TCCA – were specifically as follows:

16

15.)    A defendant may not be placed on deferred adjudication for an offense under Penal Code § 49.08, intoxication manslaughter. Tex. Code Crim. Proc. art 42.12, § 5(d)(1)(A) (West 2008). [Kuriger's] original sentence of deferred adjudication was not authorized by law;

16.)    A defendant who has enjoyed the benefits of an agreed judgment prescribing a too-lenient punishment should not be permitted to collaterally attack the judgment on a later date on the basis of the illegal leniency. *Rhodes v. State*, 240 S.W.3d 882, 891-92 (Tex. Crim. App. 2007);

17.)    [Kuriger] accepted the benefits of the deferred adjudication. He did not raise any complaint that the sentence was not authorized by law until after he was adjudicated for failure to comply with the terms of his community supervision. He is estopped from raising any complaint regarding the illegal sentence;

18.)    [Kuriger] is not entitled to relief on Grounds 2 and 3[.]

Dkt. 14-1 at 27. But this Court need not determine the applicability of that estoppel-by-judgment doctrine here because a federal habeas court reviews the state court's judgment – not the written opinion on which it is based. *See Green v. Thaler*, 699 F.3d 404, 414 (5th Cir. 2012) (noting, in the section 2254 context, that "we only review the state court's actual decision, not the written opinion on which it is based"; citing *St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc), *cert denied*, 537 U.S. 1104 (2003) ("[W]e do not interpret AEDPA in such a way that would require a federal habeas court to order a new sentencing hearing solely because it finds the state court's written opinion unsatisfactory. It seems clear to us that a federal habeas court is authorized by Section 2254(d) to review

only a state court's 'decision,' and not the written opinion explaining that decision." (footnote omitted))); *see also Baez Arroyo v. Dretke*, 362 F.Supp.2d 859, 873 (W.D. Tex. 2005) ("A federal habeas court is to review only a state court's ultimate legal conclusion, and not the written opinion explaining the decision.") (citations omitted). In other words, this Court is not bound by the state court's reasoning for denying the IAC ground for relief and may determine whether it passes muster under *Strickland*.

A second point: Kuriger pleaded guilty to the intoxication manslaughter charge. *See* Dkt. No. 14-1 at 10. And a valid guilty plea waives all claims of ineffective assistance of counsel "except insofar as the alleged ineffectiveness relates to the giving of the guilty plea." *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). Here, because Kuriger's IAC claim relates to the giving of the guilty plea – specifically, that he would not have entered it had his counsel properly advised him that the deferred adjudication judgment was illegally lenient – a *Strickland* analysis is appropriate.

Turning to the *Strickland* analysis, the Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland*, under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

18

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a

19

flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562

U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a

federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[2]

---

[2] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must

Here, Kuriger cannot show how he was prejudiced by the illegally-lenient sentence. In the guilty-plea context, "'[p]rejudice occurs if 'there is a reasonable probability that, but for his counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

In an attempt to meet that standard, Kuriger asserts, in a conclusory fashion, that he would have insisted on going to trial had he known the deferred adjudication judgment was illegal. But such bare allegations are insufficient to establish prejudice in this context. *See Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) (rejecting IAC claim in the guilty plea context where the petitioner claimed that he would have insisted upon going to trial had he not been told that his wife would get probation if he pleaded guilty).

Further, Kuriger must also show that going to trial would have given him a reasonable chance of obtaining a more favorable result. *See King v. Davis*, 898 F.3d 600 (5th Cir. 2018). And, although Kuriger insists his blood was negative for alcohol, as the state habeas court noted in the context of rejecting Kuriger's actual innocence claim, and as is obvious from documents

---

show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

that he attached to his federal habeas petition, Kuriger's test results did show the presence of both Alprazolam and Diazepam. *See* Dkt. 2 at 11-12.

Finally, Kuriger's bare insistence that he would have insisted on a trial is also belied by the obvious fact that he benefited from the illegally-lenient sentence.

In sum, Kuriger has not shown *Strickland* prejudice as to his IAC ground two, so the state habeas court's rejection of this ground for relief was not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Thus, even if the statute of limitations did not bar this claim (which it does), it is substantively meritless.

### ii.    *Ground Three – Due Process*

In his final ground for relief, Kuriger claims that the 2008 plea agreement resulted in an illegally-lenient sentence and therefore amounted to an illegal contract in violation of due process. *See* Dkt. 2 at 7.

Initially, for the same reasons discussed above in relation to ground two, the undersigned concludes that this ground for relief is  barred by the AEDPA's statute of limitations, neither statutory nor equitable tolling apply, and Kuriger cannot demonstrate actual innocence sufficient to dodge the statute of limitations.

But even were the Court to consider it on the merits, ground three fails substantively.

To the extent that Kuriger complains that the judgment of deferred

adjudication violates *Texas* law and therefore warrants federal habeas relief, as the Supreme Court has reiterated many times, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Estelle*, 502 U.S. at 67-68 ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."; citing 28 U.S.C. 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam) (footnote omitted)).

And, to the extent that Kuriger maintains that this ground for relief presents a federal due process issue, the argument is similarly unavailing. "The misapplication of state law is not cognizable in a federal habeas proceeding unless petitioner can prove that the error deprived him of a fair proceeding or trial." *Wentworth v. Morgan*, Civil Action No. 06-17-KKC, 2006 WL 3760256, at *6 (E.D. Ky. Dec. 14, 2006) (rejecting petitioner's section 2254 claim that an illegally-lenient sentence under state law amounted to a federal due process violation) (citing *Mattheson v. King*, 751 F.2d 1432, 1445 (5th Cir. 1985)). Indeed, only where the sentence is arbitrary or capricious does the misapplication of state law violate due process. *See Richmond v. Lewis*, 506 U.S. 40, 50 (1992).

Here, Texas law suggests that a sentence like the one of which Kuriger complains will be upheld when it benefits the defendant, even though its terms

might conflict with a state statute. *See Rhodes*, 240 S.W.3d at 891-92 (holding that a petitioner who enjoyed the benefits of an illegally-lenient sentence was estopped from collaterally attacking that judgment on a later date); *Murray v. State*, 302 S.W.3d 874, 882 (Tex. Crim. App. 2009) (characterizing *Rhodes* as holding that "a party who accepts the benefit of a judgment that imposes an illegally lenient sentence is estopped from challenging the judgment at a later time"). Thus, the illegally-lenient deferred adjudication agreement was enforceable, and Kuriger provides no argument or explanation – only conclusory assertions – as to how such sentence was arbitrary or capricious.

Kuriger's third ground for relief should be denied as barred by the AEDPA's statute of limitations, or, alternatively, as meritless.

## Recommendation

The Court should deny Kuriger's application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the

briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      SO ORDERED.

      DATED: July 22, 2021.

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE